**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Leonard Lambright, | No. CV-19-00425-TUC-CKJ |
| Lambright, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

This matter was referred to Magistrate Judge Maria S. Aguilera, pursuant to Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Civil) 72.1(a). On February 9, 2022, Magistrate Judge Aguilera issued a Report and Recommendation (R&R). She recommends Lambright be denied habeas relief. For the following reasons, the Court adopts the recommendation and denies the Amended Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Amend. Petition (Doc. 16) filed by Petitioner (Lambright).

## STANDARD OF REVIEW

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, "'[a] judge of the [district] court shall make

a *de novo* determination of those portions of the [R&R] to which objection is made.'" *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C. § 636(b)(1)).

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections.  28 U.S.C. § 636(b)(1)(C); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*). To the extent that no objection has been made, arguments to the contrary have been waived.  Fed. R. Civ. P. 72; *see* 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the R&R), *see also  McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)).

The parties were sent copies of the R&R and instructed that, pursuant to 28 U.S.C. § 636(b)(1), they had 14 days to file written objections.  *See also*, Fed. R. Civ. P. 72 (party objecting to the recommended disposition has fourteen (14) days to file specific, written objections). The Court has considered the Objection filed by Lambright, the Respondent's Reply, and the original briefs and exhibits considered by the Magistrate Judge relevant to Lambright's objections.

## REPORT AND RECOMMENDATION: OBJECTIONS

As explained in the R&R, Lambright prevailed in undoing a death sentence he received in 1982 after being found guilty by a jury of first-degree murder, kidnapping, and sexual assault. *State v. Lambright (Lambright I)*, 673 P.2d 1, 3 (Ariz. 1983). The trial court sentenced him to death for the murder and to 21 years in prison for kidnaping and 21 years for sexual assault. "The trial court specified that the two prison terms were to run consecutively but did not state whether the death penalty was concurrent or consecutive.

In 2007, the United States Court of Appeals for the Ninth Circuit found Lambright had ineffective assistance of counsel during the penalty phase of his trial, vacated the death

sentence, and remanded for issuance of a writ of habeas corpus and a new sentencing proceeding. *Lambright v. Schriro* (*Lambright II*), 490 F.3d 1103, 1106 (9th Cir. 2007) (*per curiam*).

In 2015, Lambright was resentenced for the capital murder conviction to life in prison, with the possibility of parole after serving 25 years. This Petition alleges constitutional violations related to the resentencing as follows: 1) violation of Arizona statutes, due process and double jeopardy for failing to run the life sentence concurrent with his other sentences, which were completed in 2012;  2) the resentencing was based on unreliable information in violation of due process; 3) the sentencing court erred in admitting testimony from the prior proceeding in violation of the Confrontation Clause to the Sixth Amendment, and 4) the delay in the resentencing violated due process and his right to a fair trial.

The Magistrate Judge rejected these arguments. She recommends that this Court defer to the Arizona Court of Appeals' decision in *State v. Lambright (Lambright III)*, 404 P.3d 646, 649 (Ariz. App. 2017) that these claims lack constitutional merit. Also, she recommends that the Court find the claims challenging the state's sentencing strategy for concurrent and consecutive sentencing are not cognizable under habeas.

Lambright objects to the Magistrate Judge's findings of fact and conclusions of law, and her recommendation to deny the Petition.

1. <u>Imposition of consecutive sentence on Count 1 for capital murder violated Arizona statutes, due process and double jeopardy.</u>[1]

At resentencing, the state no longer pursued the death penalty as a punishment, and the trial court was required to sentence Lambright to life with the possibility of parole after 25 years. Pursuant to A.R.S. § 13-708, Lambright objected to the trial court running the life term consecutive to the other sentences he had completed in 2012. At the time, Arizona

---

[1] The Fifth Amendment to the Constitution, Double Jeopardy Clause, provides: "…nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb…" The Due Process Clauses are found in the Fifth Amendment and the Fourteenth Amendments to the Constitution, as follows: "No person shall ... be deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and "...nor shall any State deprive any person of life, liberty, or property, without due process of law, *id.* amend. IVX.

law provided: "[i]f multiple sentences of imprisonment are imposed on a person at the same time, . . . the sentence or sentences imposed by the court shall run concurrently unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence." Ariz. Rev. Stat. § 13-708 (1978).  "If a sentence of imprisonment is vacated and a new sentence is imposed on the defendant for the same offense, the new sentence is calculated as if it had commenced at the time the vacated sentence was imposed, and all time served under the vacated sentence shall be credited against the new sentence." Ariz. Rev. Stat. § 13-712(C) (1978).

"Lambright argued that, under Ariz. Rev. Stat. § 13-708, he could not, as a matter of law, be resentenced to a consecutive term because the original death penalty sentence was silent and, therefore, concurrent." (R&R (Doc. 32) at 2 (citing *Lambright III*, 404 P.3d at 650)). Therefore, the resentencing had to be for a concurrent life sentence. He calculated that he began serving time on his death sentence upon his arrest and should have received credit for that time when the sentence was converted to life in prison. He expected immediate parole eligibility. Instead, the sentencing-court imposed a consecutive life sentence. Lambright will not become eligible for parole until 2037. *Id.* at 3.

The Magistrate Judge found this argument foreclosed by *Lambright III*, 404 P.3d at 649.[2] On direct appeal of the resentencing, the state court considered this argument and found that a death penalty sentence is not a sentence for a term of imprisonment and not subject to § 13-708. A failure to designate whether a death penalty is concurrent or consecutive is not governed by the concurrent default provision in A.R.S. § 13-708. There is no need to make the designation unless and until a death sentence is changed to a life sentence in prison, with parole eligibility after twenty-five years. The designation of whether a life sentence runs concurrent or consecutive to any other prison sentences is made by the court at resentencing. *Id.*

---

[2] The Arizona Court of Appeals affirmed in a published opinion, holding that the sentence violates neither state law nor the federal Constitution. *Lambright III*, 404 P.3d at 646. Lambright's requests for review by the Arizona Supreme Court and the United States Supreme Court were denied. *Lambright v. Arizona*, 139 S. Ct. 298 (2018) (mem.). This timely proceeding followed. (R&R (Doc. 32) at 3.)

Lambright's due process argument follows from the above argument of error. He asserts that until the appellate decision in his case, the law in Arizona, expressed by the Arizona Supreme Court, treated death penalty sentences as terms of imprisonment. Lambright argues that "the [Arizona] Court of Appeals adopted an interpretation of a sentencing statute which was unexpected and indefensible in reference to prior law, in violation of due process." (Objection (Doc. 37) at 2.) In other words, "[t]his retroactive increase in his punishment violated due process." *Id.* at 3 (relying on *Bouie v. City of Columbia*, 378 U.S. 347 (1964). (Objection (Doc. 37) at 2-5.) He argues that this Court must follow the sentencing law as set out by the Arizona Supreme Court. He relies on *State v. Gulbrandson*, 906 P.2d 579 (Ariz. 1995)). *Id.* at 3.

Also, flowing from his assertion that the state court wrongly applied A.R.S. § 13-708, Lambright argues that imposing a consecutive term at resentencing deprived him of sentencing credits in violation of the Double Jeopardy Clause in the Fifth Amendment to the Constitution. (R&R (Doc. 32) at 3.) Lambright argues he should have received credit for the time spent in prison from his arrest to the resentencing because the death sentence was running concurrent with the consecutive 21-year prison sentences. In other words, the consecutive sentence imposed at resentencing placed him in jeopardy again for the murder conviction. This argument necessarily turns on the success of the argument that under § 13-708 the death sentence ran concurrent with the consecutive sentences imposed for the kidnapping and sexual assault offenses.

The Magistrate Judge correctly set out the law for habeas review, as follows:

This habeas action was filed after April 24, 1996, and is, therefore, governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Ochoa v. Davis*, 16 F.4th 1314, 1325 (9th Cir. 2021). Under AEDPA, federal habeas courts have limited authority to grant relief on claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). A federal court must defer to the state court's decision on such a claim unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "This is a 'highly deferential standard for

/////

evaluating state-court rulings.'" *Demetrulias v. Davis*, 14 F.4th 898, 905 (9th Cir. 2021) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

(R&R (Doc. 32) at 3.)

The only way around this highly deferential standard is for Lambright to show that the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' *id.* § 2254(d)(1), or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' *id.* § 2254(d)(2)." *Id.* Lambright's reliance on *Gulbrandson* to make this showing fails. The Court agrees with the state appellate court's conclusion that *Gulbrandson* is "distinguishable." *State v. Lambright III*, 404 P.3d at 652.

Defendant Gulbrandson was sentenced to death for first-degree murder and five years in prison for theft, with the sentences expressly given to run consecutive, and the court found affirmatively that a defendant whose death sentence has been vacated is entitled to credit upon resentencing to a life term for the period of time spent on death row. The court in *Gulbrandson* did not consider the issue raised by Lambright of whether such a defendant is entitled to credit for time spent on death row upon resentencing to a life term "where, as here, a defendant was serving prison terms during that period of incarceration and the subsequently imposed life term is consecutive to those terms." *Lambright III*, 404 P.3d at 654.

Lambright asks this Court to rely on a footnote in *Gulbrandson* referencing that at the original sentencing, the court split 652 days of credit for presentence incarceration between the five-year term of imprisonment and consecutive death sentence, "undoubtedly" to credit "part of the incarceration time against the death sentence on the theory that the death sentence could at some future time be reduced to a life sentence without possibility of release until the completion of service of 25 years." *Gulbrandson*, 906 P.2d at 589 n.2.  This dictum is wobbly footing for Lambright's argument that the state court in his direct appeal got it wrong. The state appellate court explained that the broader

construction of 13-712(C), which requires courts to give a defendant credit on a new sentence for time spent in prison pursuant to a vacated sentence is limited because a defendant is not entitled to double credit for presentence incarceration when a consecutive term is imposed. *Lambright III*, 404 P.3d at 655 (citing *State v. Cuen*, 761 P.2d 160, 162 (Ariz. App. 1988)). In other words, *Gulbrandson* suggests that although a defendant is entitled to the credit for time spent incarcerated "pursuant to a vacated sentence" when consecutive terms are imposed, he is not entitled to such credit unless and until the first sentence has been served. *Lambright III*, 404 P.3d at 655. (emphasis added). "More importantly, these cases[3] do not stand for the proposition that a defendant is entitled to incarceration credit on a subsequently imposed consecutive prison term." *Lambright III*, 404 P.3d at 652.

Instead of applying *Gulbrandson,* the state appellate court found Lambright was being sentenced anew once the death sentence was vacated. *Id.* (citing *State v. Thomas*, 688 P.2d 1093, 1096 (Ariz. App. 1984)). "The court then had the discretion to impose the life term consecutively to previously imposed terms, constrained only by statute, case law, and constitutional principles when choosing between a concurrent or consecutive term." Id. at 652-53. The court applied *State v. Wallace*, 272 P.3d 1046, 1054 (Ariz. 2012), where the Arizona Supreme Court vacated two death sentences for the murders of two victims, imposed two life terms of imprisonment, and ordered that they be served consecutively to the life term the court imposed for the murder of a third victim, after vacating that death sentence in a prior decision. *Lambright III*, 404 P.3d at 652–53.

---

[3] The state appellate court also considered *Tittle v. State* (*Tittle II*), 816 P.2d 267, 268 (Ariz. App. 1991). In *Tittle II*, the appellate court held that the defendant, whose conviction and death sentence for first-degree murder had been reversed and remanded, was entitled to credit on the prison term imposed after he was subsequently convicted of second-degree murder, for the time he had served while on death row. *Tittle II*, 816 P.2d at 267–68. Distinguishing *Tittle II* because in *Tittle I*, it was specified that the trial court had ordered the twenty-one-year term for armed robbery to be served consecutively to the death sentence. Therefore, it was clear that the death sentence preceded the twenty-one-year robbery sentence, and so any credit for time served, including the potential good-time credits at issue in the case, would apply to the life term that replaced the death sentence. *Lambright*, 404 P.3d at 654.

This Court agrees with the state appellate court's approach in *Lambright III*, including the conclusion that "because we have rejected Lambright's argument that he was presumptively serving a concurrent death sentence, we necessarily reject his [double jeopardy] claim that under these authorities he was serving all of this time under the vacated sentence."

The same logic applies to defeat Lambright's due process clause claim. He argues that the Arizona Court of Appeals affirmed his sentence based on an "unexpected and indefensible" construction of Ariz. Rev. Stat. § 13-708. He says that, prior to the decision in his case, *Lambright III,* Arizona courts agreed that the phrase "sentence of imprisonment" included death sentences. Because the Court rejects this argument as explained above, it does not matter whether the Magistrate Judge rightly or wrongly applied *Bouie v. City of Columbia,* 378 U.S. 347 (1964). Without its due process shroud, Lambright's claim is nothing more than a challenge to a state sentencing scheme to which *Bouie* does not apply. (R&R (Doc. 32) at 7 (citing *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004)). *See also United States v. Mohamed*, 459 F.3d 979, 984 (9th Cir. 2006) (affirming the retroactive application of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), although it resulted in a longer sentence for the defendant); *Beaty v. Stewart*, 303 F.3d 975, 986 (9th Cir. 2002) (finding claim "that the trial court improperly imposed consecutive sentences in violation of Arizona law" was "not cognizable in federal habeas proceedings"); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (stating that "[t]he decision whether to impose sentences concurrently or consecutively" is not cognizable in federal habeas proceedings (citing *Ramirez v. Arizona*, 437 F.2d 119, 120 (9th Cir. 1971) (per curiam).

In conclusion, this Court finds the state appellate court squarely addressed and adjudicated this claim on the merits. The finds that the state court's decision was not contrary to, or involving, any unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. The state court did not base its decision on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding. The highly deferential standard of review applies. As recommended by the Magistrate Judge, the Court will deny this claim.

2. Resentencing due process violations based on unreliable information, including hearsay evidence introduced in violation of the confrontation clause, and delay caused by bad faith conduct of Respondent.

The relevant procedural posture to these alleged due process violations begins with the remand in 2007, when the United States Court of Appeals for the Ninth Circuit found ineffective assistance of trial counsel during the penalty phase of the 1982 trial, vacated the death sentence and remanded for penalty phase aggravation trial and resentencing. *Lambright II*, 490 F.3d at 1106, 1128. *Id.*

On remand, there began a lengthy, several years long, dispute over Respondent's request to modify a protective order to allow the Pima County Attorney's Office (the agency that would be prosecuting Lambright's resentencing) to access materials produced during the habeas proceeding. According to Lambright, this delay resulted from bad faith conduct by the Respondent in the prior habeas case, (R&R (Doc. 32) at 2) involving an inadvertent improper disclosure of protected material by Respondent, (Objection (Doc 37) at 10).

The resentencing proceeding did not begin until late 2015 and by then several witnesses, including Kathy Foreman, the key prosecution witness, had died and were no longer available to testify. Lambright sought to preclude, without success, introduction of her trial testimony at the 2016 penalty phase trial. At the aggravation trial, the jury found the presence of an aggravating circumstance, namely, that Lambright committed the murder in an especially cruel manner but hung on the penalty because the jury could not agree on whether to sentence Lambright to death. The Court declared a mistrial.

Thereafter, the prosecution dropped its request for a death sentence, and the trial court set a resentencing hearing. With death no longer available as a punishment, the trial court was required to sentence Lambright to life in prison with the possibility of parole after 25 years. (R&R (Doc. 32) at 2).

Lambright outlines his due process claim as follows. First: "Most notably, this included the sentencing court's reliance on an aggravation finding that was based exclusively on past testimony of unavailable witnesses that was read into the record, including that of unindicted co-defendant Kathy Foreman, medical examiner Richard Froede, and forensic anthropologist Walter Birkby. [(Amend. Petition (Doc. 16) at 31-39)]." (Objection (Doc. 37) at 5.) According to Lambright the Magistrate Judge mischaracterized this argument as being "'[a]t bottom'" a complaint "'that the record could have been more complete.'" *Id.* (quoting (R&R (Doc. 32) at 11.)

Lambright argues the failure to exclude the prior trial testimony was an admission of unreliable hearsay evidence and violated the Confrontation Clause in the Sixth Amendment, which provides that a person accused of a crime has the right to confront a witness against him in a criminal action. *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (explaining defendant's right to compel a witness "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."); *State v. Robinson*, 153 Ariz. 191, 204 (1987) ("The rule remains that whenever possible, eye-to-eye, face-to-face, jury-to witness confrontation is required."). *See* (Amend. Petition (Doc. 16) at 44-47.)

"The Confrontation Clause applies to a witness whose statement is made 'for the purpose of establishing or proving some fact.'" (Objection (Doc. 37) at 8 (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (cleaned up)). As explained in the Objection, due process is at issue, as follows:

> This includes testimony offered in support of finding an aggravating circumstance, such as Foreman's. Unsurprisingly, then, the U.S. Supreme Court has held that the Sixth Amendment applies during capital aggravation trials. *Ring*, *supra*. And the Arizona Supreme Court has long recognized that a defendant has a Sixth Amendment right to confrontation during a capital aggravation hearing. *State v. Greenway*, 823 P.2d 22, 28 n.1 (Ariz. 1991). Consistent with these principles, Arizona law provides that capital aggravation trials are governed by the same rules of evidence controlling other criminal trials. A.R.S. §13-751(B). *See also United States v. Mills*, 446 F.Supp.2d 1115, 1127-29 (C.D. Cal. 2006) (applying *Ring*, concluding that whether a defendant is eligible for the death penalty involves "pure findings of fact" and therefore "the Sixth Amendment right to confrontation applies").

(Objection (Doc. 37) at 8-9.) "Because Mr. Lambright's right to confrontation applied during his capital aggravation trial, the Magistrate Judge's recommendation that this claim be denied was error." *Id.* at 9.

Lambright argues that the need to cross-examine Foreman at the penalty phase, aggravation proceeding, was especially keen because she was an interested witness. "Foreman had everything to gain and nothing to lose by testifying for the prosecution"; her immunity from prosecution was contingent on her testifying against the co-defendants." (Amend. Petition (Doc. 16) at 41 (cleaned up).

The Magistrate Judge correctly noted that this is the starting point. (R&R (Doc. 32) at 12 (citing *Franklin*, 18 F.4th at 1114 (explaining that "a statement by a coconspirator that inculpates the defendant 'is inherently unreliable'" (quoting *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995))). Foreman was, however, cross-examined during the guilt phase of the trial, and as noted, trial counsel was only found ineffective in the penalty phase. "'Cross-examination is the 'gold standard' of procedural reliability.'" *Id.* (citing *United States v. Franklin,* 18 F.4th 1105, 1126 (2021) (quoting *Murdoch v. Castro*, 609 F.3d 983, 1003 (9th Cir. 2010) (*en banc*) (Kozinski, C.J., dissenting)). *See Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972) (holding that testimony given in an earlier trial, and read into the record during a second trial, was reliable because it was subject to cross-examination). It is sufficient to render even an accomplice's testimony reliable. *United States v. Flores*, 725 F.3d 1028, 1038 (9th Cir. 2013). *Compare*: *United States v. McGowan*, 668 F.3d 601, 607 (9th Cir. 2012) (finding testimony unreliable because it was given during unrelated trial and no one representing McGowan's interests afforded opportunity to cross-examine witness to test his veracity); *United States v. Hanna*, 49 F.3d 572 (9th Cir. 1995) (finding testimony unreliable because, among other things, trial court severely restricted scope of direct and cross-examination of witness

Here, Lambright argues cross-examination of Foreman during the 1982 trial does not render her testimony reliable for resentencing him in 2016. On remand, the prosecutor needed to prove the existence of A.R.S. §13- 751(F)(6), the "especially heinous, cruel, or

depraved" aggravator. The cross-examination in 1982 was not tailored to be relevant to the (F)(6) aggravator because much of that case law did not yet exist. In other words, "as far as (F)(6) was concerned, testimony in 1982 was never meaningfully subjected to adversarial testing, since they were never questioned in light of the aggravation standard employed by the resentencing court." (Amend. Petition (Doc. 16) at 44.)

Lambright concludes, therefore, the delay in resentencing him denied him the ability to confront his accusers using the law which governed the 2016 proceeding. *California v. Green*, 399 U.S. 149, 157 (1970) (the "literal right to 'confront' the witness at the time of trial ... forms the core of the values furthered by the Confrontation Clause."). *Id.* at 46. According to Lambright, the Magistrate Judge failed to recognize the due process violation, which was explained as follows:

> Most significantly, the prior testimony of Foreman, Froede, and Birkby predated the development of the aggravation case law that governed the penalty retrial. Accordingly, they were not—indeed, could not have been—subjected to meaningful adversarial testing, rending them inherently unreliable. Doc. 16 at 35-36. Because these witnesses were not crossed on the law governing the penalty retrial, their testimony was "made under oath but absent any other procedural mechanism" guaranteeing reliability. *United States v. McGowan*, 668 F.3d 601, 608 (9th Cir. 2012). Accordingly, the Magistrate Judge's suggestion that Mr. Lambright's opportunity to cross-examine these witnesses rendered their testimony reliable is incorrect. Doc. 32 at 12.

(Objection (Doc. 37) at 6.) In short, Lambright's resentencing was based on unreliable information.

For all the other reasons found by the Magistrate Judge, the Court adopts the recommendation to deny this claim. *See* (R&R (Doc 32) at 8-14.) But first and foremost, the claim is denied because Lambright was not resentenced to the death penalty. He was resentenced to a life term in prison, with parole eligibility after twenty-five years. The trial court was not imposing a death sentence, subsequent to the aggravation proceeding. The penalty phase ended in a mistrial. This Court finds that the Magistrate Judge correctly found:

> "The U.S. Supreme Court has never established a right to confront witnesses at sentencing." *Smith v. Ryan*, 823 F.3d 1270, 1279 (9th Cir. 2016). To the contrary, the Supreme Court has affirmatively "held that the Confrontation Clause does not bar courts from considering unconfronted statements during

1         sentencing proceedings." *Sivak v. Hardison*, 658 F.3d 898, 927 (9th Cir.
2         2011) (citing *Williams v. New York*, 337 U.S. 241 (1949)). Consequently,
        there are no facts Lambright can prove to establish a violation of his
3         confrontation rights at his resentencing. Lambright's reliance on *Crawford v.*
        *Washington*, 541 U.S. 36 (2004), is misplaced, because "*Crawford* speaks to
4         trial testimony, not sentencing." *United States v. Littlesun*, 444 F.3d 1196,
        1199 (9th Cir. 2006). His reliance on *State v. McGill*, 140 P.3d 930 (Ariz.
5         2006), is also misplaced; to obtain habeas relief, he must prove that his
        confinement violates federal law. 28 U.S.C. § 2254(a).The Court will
6         recommend that Lambright's claim be denied.

7 (R&R (Doc. 32) at 14-15.) The Court adopts this recommendation.

8        The Court writes separately to address Lambright's argument that he was prejudiced

9 by the delay in resentencing him because of developments in aggravation case law over

10 these many years. Lambright refers to the 2002 United States Supreme Court ruling *Ring*

11 *v. Arizona,* 536 U.S. 584, 603-09 (2002) that "in order to render the defendant eligible for

12 the death penalty, the prosecution is required to prove to a jury beyond a reasonable doubt

13 that he is guilty of one or more statutorily defined aggravating factors. A.R.S. §13-752(E);

14 *id.* §13- 751(B)." (Objection (Doc. 37) at 8.)

15        The Court discusses the 1982 Foreman trial testimony considered by the court at the

16 2016 resentencing because if her testimony passes constitutional muster so does the

17 testimony of Froede or Birkby. Kathy Foreman was Lambright's girlfriend and was with

18 him and codefendant Smith on a cross-country road trip.

19         According to Foreman, who testified against Smith and Lambright in
        exchange for immunity, Smith complained to Lambright about the fact that
20         he did not have a traveling companion with whom he could engage in sexual
        relations. In response, Lambright said they would find him a girl. Lambright
21         also said that "he would like to kill somebody just to see if he could do it."
        While passing through the Tucson, Arizona area, the trio encountered a
22         hitchhiker, Sandra Owen, and offered her a ride. Owen accepted, got in the
        car, and the four drove off. Smith raped Owen in the back seat of the car on
23         the way to a mountain site where they all exited the vehicle. Smith then raped
        Owen a second time and thereafter began choking her. Lambright then
24         stabbed Owen numerous times while Smith and Foreman restrained her.
        Finally, Lambright struck Owen in the head with a rock. Owen died as a
25         result of her injuries.

26 *Lambright II v. Schriro*, 490 F.3d at 1106–07.

27        Between the original trial in 1982 and the resentencing in 2016, sentencing law in

28 Arizona did change, pursuant to *Ring*. In 1982, when the original trial and sentencing

occurred the judge found "only one aggravating circumstance existed, namely 'that the offense was committed in an especially heinous, cruel or depraved manner.'" *Lambright II*, 490 F.3d at 1109 (cleaned up). "He nonetheless sentenced Lambright to death because he found that the limited mitigating evidence presented was insufficiently substantial to outweigh this single aggravating factor. The judge noted that under Arizona law, "'[t]he Court ... shall impose a sentence of death if it finds one or more aggravating circumstances and finds no mitigating circumstances sufficiently substantial to call for leniency.'" *Id.* at 1009-1010 (cleaned up).

On remand, *Ring* applied. To render the defendant eligible for the death penalty, the prosecution had to prove to a jury beyond a reasonable doubt that Lambright was guilty of one or more statutorily defined aggravating factors, here, the A.R.S. §13-751(F)(6) especially heinous, cruel, or depraved aggravator. When these efforts failed in the mistrial proceed, the state dropped the death penalty.

Without equivocation, the Court agrees with the Magistrate Judge, who agreed with the state appellate court's review of this question. Lambright proceeded to resentencing like any other defendant in a non-death penalty case. The state appellate court correctly recognized the posture of the case, distinguishing between the penalty-phase aggravation trial and the resentencing for life in prison, with parole eligibility after twenty-five years. "[O]nly one sentence was available at that point, a life term with parole eligibility after twenty-five years." *Lambright III*, 404 P.3d at 650 (citing 1979 Ariz. Sess. Laws, ch. 144, § 1). The state appellate court explained: "There was no aggravated term that could have been imposed based on aggravating circumstances found by the jury." *Id.* at 655.

"Because the trial court declared a mistrial when the jury could not reach a verdict on whether to sentence Lambright to death, whether the trial court had erred in admitting Foreman's testimony during the aggravation phase of that resentencing trial is moot." *Id.* at 655 (citing *State v. Frederick*, 630 P.2d 565, 567 (Ariz. App. 1981) (finding alleged trial errors moot where jury did not find defendant guilty on those specific counts and plea agreement terminated case); *State v. Laughter*, 625 P.2d 327, 331 (Ariz. App. 1980)

(finding alleged sentencing error moot in light of grant of new trial)). Lambright understood this too at the time. He did not object to the court's consideration of Foreman's trial testimony for purposes of the resentencing hearing, and the state appellate court correctly opined that he would have had no basis for doing. This is because the rules regarding the admissibility of evidence at trial do not apply at a sentencing hearing such as the one that resulted in the consecutive life term. *Id.* (citing *State v. Conn*, 669 P.2d 581, 582–83 (Ariz. 1983)). The state appellate concluded, as follows:

> The trial court resentenced Lambright on January 25, 2016, to a consecutive life term of imprisonment, articulating its reasons for doing so. The court stated it had considered in mitigation Lambright's exemplary conduct while incarcerated. Although it acknowledged his difficult childhood and service in the Vietnam War, it declined to give these factors substantial weight. The court agreed with the jury that the murder had been committed in an especially cruel manner. As additional "aggravating" circumstances, it noted the fear experienced by and emotional trauma inflicted on the victim, the fact that Lambright had acted as an accomplice during the sexual assault, and the overall brutality of the offenses. The court gave Lambright 1,183 days' incarceration credit for the period between October 30, 2012, the date he was discharged from the prison term on count three, and the date of the resentencing. This appeal followed.

*Id.* at 650 (Ct. App. 2017).

The appellate court rejected Lambright's argument that the consecutive sentence was imposed based on the jury finding of aggravation tendered in the mistrial. Relying on the Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160, 163 (2009), it "acknowledged that most states 'entrust to judges' unfettered discretion' whether to impose consecutive or concurrent prison terms." *Id.* at 655. "Section 13-708 only required the court to state on the record its reasons for imposing a consecutive rather than concurrent term, and it did so." *Id.* at 656. The state appellate court properly found that "[w]hether to order consecutive terms was then, as it is now, for the trial court to determine in the exercise of its sentencing discretion," *id.* (citations omitted)*,* with discretion disturbed only for abuse of discretion, *id.* (citations omitted).

Turning expressly to Lambright's due process claim, the appellate court recognized "the relaxation in the traditional evidentiary rules and procedures applicable to the guilt-determining stage during the penalty-determining stage is not unlimited" and that "[t]he

sentencing process ... must satisfy the requirements of the Due Process Clause." *Lambright,* at 656 (quoting *State v. Conn*, 669 P.2d 581, 583 (1983)). The state appellate court found there was no due process violation because "[t]he trial court was free to consider any reliable, relevant evidence, including hearsay." *Id.* (citing *State v. McGill*, 140 P.3d 930, 943 (Ariz. 2006); *State v. Gordon*, 610 P.2d 59, 62 (Ariz. 1980) (finding trial court's familiarity with presentence report and stated reasons justifying consecutive prison terms sufficient to uphold sentence)). This Court agrees with the state appellate court's rejection of "Lambright's claims that due process and his Sixth Amendment rights, as articulated in *Crawford v. Washington*, 541 U.S. 36 [] (2004), were violated by the court's consideration of Foreman's trial testimony." *Id.* at 656.

The facts of the crime that Foreman attested to during the 1982 trial never changed. Those facts supported the sentencing court's conclusion that the murder was committed in a cruel manner. This was given as one reason, in combination with the other articulated reasons, for imposing a consecutive rather than concurrent life sentence. The consecutive sentence was not an abuse of discretion because it was based on articulated reasons as follow: the fear experienced by and emotional trauma inflicted on the victim; the fact that Lambright had acted as an accomplice during the sexual assault, the overall brutality of the offenses, and mitigation due to Lambright's exemplary conduct while incarcerated. The cross-examination during the 1982 provided the "minimal indicia of reliability" needed for a sentencing. *United States v. Vanderwerfhorst,* 576 F.3d 929, 936 (9th Cir. 2009).

Because there was no due process violation, there was no prejudice. *See* (Objection (Doc. 37) at 9 (asserting "the Supreme Court has repeatedly articulated that delay attributable to the state which prejudices a defendant violates due process; Lambright's due process right to be free from prejudicial delay is clearly established.") The Court rejects Lambright's "final claim[, which] asserts that the lengthy delay in conducting his new penalty trial caused by the prosecution's meritless protective order litigation prejudiced his ability to contest the State's aggravation and make an effective mitigation presentation." *Id.*

- 16 -

In conclusion, this Court finds the state appellate court squarely addressed and adjudicated this due process claim on the merits. The Court finds that the state court's decision was not contrary to, or involving, any unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. The state court did not base its decision on an unreasonable determination of the facts in light of the record. The highly deferential standard of review applies. As recommended by the Magistrate Judge, the Court will deny this claim.

CONCLUSION

After de novo review of the issues raised in Lambright's objections, this Court accepts and adopts the Magistrate Judge's R&R as the findings of fact and conclusions of law of this Court and denies the Amended Petition.

**Accordingly**,

**IT IS ORDERED** that after a full and independent review of the record, in respect to the objections, the Magistrate Judge's Report and Recommendation (Doc. is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that the Amended Petition (Doc. 16) is DISMISSED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment and close this case.

**IT IS FURTHER ORDERED** that in the event Lambright files an appeal, the Court declines to issue a certificate of appealability, pursuant to Rule 11(a) of the Rules Governing Section 2254 cases because reasonable jurists would not find the Court's procedural ruling debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 11th day of August, 2022.

Honorable Cindy K. Jorgenson
United States District Judge

- 17 -